Good morning. May it please the court, Lindsay Powell for the government. I'd like to reserve three minutes of my time for rebuttal. Plaintiffs lack standing in this case because they have no cognizable interest in the information that they seek, even if they did have standing or a word. No cognizable interest. That's right, Your Honor. The only harms they allege are based on having to... Those are two different things you understand. Interest and harm. That's all I'm focusing on. They have an interest. That's what their organization is all about. It's not whether they have standing and an injury in fact that's necessary. It's a different question. That's all I'm pointing out. I don't think the two can be equated. They have an interest. What the court said in Epic, Your Honor, is that where is here, the only harms that are alleged result from not having access to information to which there is no legal right. The plaintiff does not have informational standing as that framework has been set forth. You understand the point I'm making, don't you? I just want to be clear about that. I have an interest in the information, too. I have no legal right to it. I may not have standing. They're just two different things. That's all I'm trying to be clear about. Yes, Your Honor. I think the cognizable part of cognizable interest is what bridges those two. So without the legally protected right, the interest is not cognizable. It comes up in the context of these standing doctrines. Even if plaintiffs did have standing, moreover, and the district court properly reached the merits, it clearly exceeded its authority in entering the relief that it did against the EEOC in this case, which was fundamentally about OMB's action and not the lawfulness of anything EEOC might do in the future. It's notable that at this point, most of the work required by the court's orders has already been accomplished. EEOC has conducted these collections. It's received responses from more than 85% of eligible employers. And yet the district court continues to superintend the commission's conduct, requiring it to continue this collection at significant expense to the agency. So is there anything left in the case other than the piece of the district court order that deals with getting the percentage of the response rate up to the response rate that the district court thought was? It's certainly the principal source of the continuing obligations. Sort of adjacent to that, the commission does have to file status reports every three weeks, letting the court know what actions it's taking in furtherance of increasing the response rate. And that in itself doesn't pose a burden, but that is ancillary to the main part of the relief, which is this. And then is that it? So you have the associated filing status reports, and then the percentage match. But beyond that, as far as the government's concerned, there's nothing left in issue in the case. As far as that remedial order is concerned, yes, that's the source of our continuing obligations. Okay. And when you say as far as the remedial order, what you're preserving is that you also are still objecting to the standing. Yes, that's right, and that the stay never should have been vacated. The standing, I realize it's probably our own precedent's fault, but it seems like the parties are somewhat talking past one another about standing. And correct me if I'm wrong. As I understand, there's informational standing in the sense that arises, for example, under the Freedom of Information Act, where you don't have to, in order to have standing to claim a FOIA right, you don't have to show that the lack of the information would have an impact on your organization's services or activities because you're just entitled to the information, even out of mere curiosity. So that is one version of what we refer to as informational standing. And here I take it that these plaintiffs are not claiming that kind of standing. They're claiming that there's information that before the stay, the EEOC was legally required to obtain, and that the lack of that information had a demonstrable effect that they showed with declarations on their representation of clients, on their public education activities, on their, you know, monitor of workplace fairness. And so it's a more traditional standing inquiry, and in a way it's informational standing in the sense that they're, what they're wanting is information, but it's not in that narrower FOIA sense. And I take the plaintiffs here to be arguing that you've, your claim that you need a cognizable right to the information is, comes out of that, like, for want of a better narrowing term, that sort of FOIA-type informational standing, and that it doesn't apply where what they're claiming is a right to information that they would use, and the harm is to their activities. And what's your response to that? I do want to briefly bracket, we take issue, and I think this comes up more in the remedy part of this discussion, but we don't agree that EEOC was legally required to collect information. Right, and I have a question about that also, but just to take that premise. Yes, to take that premise for now. The, we disagree that the informational standing doctrine is as narrowly compliant as that sort of conception of the framework suggests. Certainly it does come up in cases involving FOIA and FACA, where you have Congress defining the right in a way where there's no need for the plaintiff to make some of the further showings that are typically required, but it hasn't been applied only in those cases. So in Eakins, for example, the plaintiff did have to make the further showing that it had suffered the type of harm that Congress meant to prevent, and that's a showing that IE plaintiffs can't make here. And here, though, the plaintiffs have made that showing by saying, for example, we represent plaintiffs in Equal Pay Act cases, and the information that this EEO1 amended form is seeking to get would be tremendously important and helpful in that. And, in fact, that's part of why the National Academy of Sciences recommended that it be collected. As far as that goes, it is notable that their claim is under the Paperwork Reduction Act and regulations implementing it, and the Paperwork Reduction Act certainly doesn't provide those protections. It's about reducing paperwork burdens and not promoting information collection. And maybe this gets to the question of cognizable or whether they have a right to the underlying injury. I took it that they were challenging an interpretation of the Paperwork Reduction Act that supported the stay, so trying to remove an obstacle. And then the question is, well, once that obstacle is removed, what's the state of play? And I understand there's been quite a bit of briefing in the district court and action on that, which really goes to the question of whether there's a legal right. Right. And on the question of legal right, there is a dispute about whether EEOC is obligated to collect the information at all. There's no dispute that EEOC is under no obligation to disclose it. Right. Well, that states and locals can get it, and they can do reports. Yeah. The scope of access by state and local entities is not clear. There is some provision for that, but it's not as though that creates the open pipeline that plaintiffs seek. Nor would that itself be enough to support their standing, even on their theory. But the district court was extraordinary about this case. The district court specifically looked at whether they had informational standing and said they do not. There's clearly concededly no right to this information. And that's where the court also started in Epic, which was not a case under FOIA or FACA or a similar statute like that. And then what the court next said in Epic was that in such a case where the entire allegation of harm is lack of access to information that causes a plaintiff to rearrange its affairs, to reallocate resources, to accommodate that change in flow of information, that that's not enough to support organizational injury where there's no legal right to standing. We don't have any other case with the same facts. So let me just go back to the question about the obligation of the EEOC. I take it that the district court's position and the plaintiff's position here was that there is a statutory obligation on the EEOC to collect data via an EEO1 and that it can only use a currently valid, approved, and inventoried EEO1 form. And that once the stay was removed, the only current valid form requires EEO1 data, both Component 1 and Component 2. And so there you do have a legal obligation on EEOC that bears anew on the agency once the stay is removed. So the question of EEOC's legal obligations was notably not litigated. There's nothing in the complaint about what EEOC would be required to do. It's hard to see how that claim would have been ripe at that point in the litigation. This was really about whether OMB acted lawfully in imposing the badge. So you don't disagree, though, that – I mean, so you're saying it's not litigated. I think that the counterpoint – I think reading the transcript and the papers below, my impression is that the plaintiffs and the district court thought actually that is the whole baseline of this litigation. You wouldn't bring a case to invalidate a stay of an obligation without assuming that what would happen when the stay is peeled back is that the obligation would then be revived. So the notion that it wasn't litigated feels – I'm not entirely following you, because I agree it wouldn't be ripe to litigate that. I mean, what their obstacle was was the stay, and they succeeded in getting that removed. So a few things. I mean, one, just as a general matter, it would be quite extraordinary to just get to assume a party's legal obligations and then have that form part of the basis for relief when the question hasn't come up. We certainly would have liked to have conceded these obligations. We do not. But then even just getting into the specifics of this case, there is no statute that requires EEOC to do this. EEOC is authorized to – To regulation. There's a regulation that requires employers to submit information, and it doesn't say EEOC must do this, much less in a particular way. So here one of the things that's in dispute is how many years' worth of information should be collected. EEOC is not under any legal obligation, statutory or regulatory, to collect a particular number of years. By the time the district court's stay order was entered, the stay was vacated. What about the fact that for years this information has been collected and published, and EEOC has said that it intends to publish in the future? And that was the premise of how the plaintiffs and the district court proceeded. Significantly, Your Honor, this information has never been collected or published. This is a novel collection of information that's actually significantly larger and more burdensome than the longstanding collection of civil – I understand that. But EEOC didn't draw that distinction. Well, it is drawn in the record here. The record reflects – Yes, it is. But we're just talking about Judge Pillard's point. Why would you bring a suit to remove the stay if you end up with nothing? And maybe that's the mistake in their litigation strategy. I understand that. But you have an agency that's had a practice of doing something, and you've relied on it. And the agency says we can't do this in the future. Why isn't that enough in this situation? Why – in other words, isn't your argument tantamount to saying no stay was necessary? So, no, Your Honor. I mean, we fully acknowledge that the district court – whether the stay was necessary. No, I mean, the stay is relevant because under the framework established by the PRA, OMB has to give agencies permission to go forward. So that was what the stay did. It authorized EEOC to go forward with the collection that it had proposed. But even at that point, had there never been a stay – The stay prevented them from going forward. The stay prevented them. I'm sorry. The approval authorized them to go forward. The stay prevented it. But had there never been a stay, EEOC had discretion to do any number of things. Adjust the timing. So I guess one way to think about it is this. Yes, let's just – let's presume that you're right, that there wasn't an obligation to collect the information because EEOC could come up with a reason not to collect it. That would be true of the Component 1 data too, right? I mean, if the computers break down, as you suggested in your brief, well, then there's going to be some accommodation made because of that. That's no less true of the Component 1 data than the Component 2 data. Right. But one relevant question is what's the baseline expectation when the stay is removed? And the baseline expectation, I think, was that both the Component 1 and Component 2 data would be collected because the only thing that was stopping that was the stay. And then, yes, it's true that something else could happen so that EEOC says, look, yeah, right now you've got to submit the revised, as the regulation says, and their latest revised one includes the Component 2, and you've got to do that. There could be something that comes along that causes EEOC to change its mind. Sure, that could happen. But the baseline expectation at the time the stay is removed is that employers are going to submit both Component 1 and Component 2 data. Is that not accurate? That – so that is certainly the district court's expectation. That appears to have been plaintiff's expectation, but that is still vastly different from a legal obligation. Right. A legal obligation – I understand your point about legal obligation because it's true that something could come up and EEOC, let's just hypothesize, the EEOC comes up with a lawful reason not to do it. That could happen. But in terms of the expectation of what would happen, but for something like that kicking in, everybody was operating on the assumption that employers were then, per the regulation, going to submit the revised EEO1, which includes Component 2 information. I certainly can't speak to everyone, but it does appear that the district court and plaintiffs had that expectation. But, again, the space between expectation and legal obligation is dispositive here. So the extraordinary thing that happens is that after staying the allegedly unlawful action undertaken by OMB, a separate agency, the court then moved quite quickly. Well, EEOC was still considering its options, trying to figure out if it made sense to collect, how quickly to collect, what it should do in these circumstances consistent with its discretion. And the court then joined that separate agency whose action was not at issue. So can I just clarify? I follow that argument. But that argument seems to me no different for the Component 2 information than the Component 1 information. It would be equally true. You would say the same thing about the Component 1 information. There's no legal obligation as to that either, right? Yes, yes. We would say that. But what happened here was the district court went so far beyond the relief that is clearly the limits of appropriate relief in an EPA case, vacating and remanding. And that's, again, with respect to the agency that did the unlawful thing in the first instance. And it tied the hands of a separate agency that has discretion to make different choices. And so EEOC here clearly should have been able to consider how to proceed under these new circumstances. Right. That goes to the remedy as to which the only thing that's left is the percentage match and the accompanying report. Yes, yes. I'm principally talking about remedy here. I do want to say, though, it's not as if the government didn't have the same expectations. Right? I mean, you're saying that, yeah, that may be what the plaintiffs had and the district court had. But your brief says at page 29, thus if OMB had never issued a stay but EEOC had, based on changed circumstances such as practical difficulties associated with collection, reconsidered its decision to collect the data. So EEOC had made a decision to collect the data. It was operating on that decision. Yes. Although I think the government may have had different understandings sooner than others in the case about what would be realistic in terms of the logistics of a collection earlier. And perhaps that could have been better communicated. After the stay was vacated. After the stay was vacated. But, again, that wasn't an issue, which is the main reason why it didn't come up sooner. EEOC's conduct has never been the focus of this litigation until the remedy order. And, again, the district court jumped in about two weeks after entering a summary judgment order, upset with the agency about the commission, about why it wasn't already complying with the summary judgment order. But, again, the summary judgment order vacating the stay didn't require EEOC to do anything, much less on that schedule. And so going so far beyond the limits of relief that are identified in cases like Palisades General Hospital, Alina Health Services, Bennett v. Donovan, which says the district court's work is at an end after it vacates and renounces the agency. That's where the court needed to stop here. And it committed clear error when it went well beyond that in superintending EEOC's conduct. So the argument about the district court's equitable power, where does that fit in? So, again, in cases under the APA, the scope of the court's recognized equitable authority is typically less than in standard private litigation. So this court has made very clear that the appropriate thing is to vacate and remand. It has acknowledged extraordinary circumstances where, after multiple trips back to the agency, the agency still hasn't complied with a clear legal directive from the court, that the court has acknowledged the power to go further. But that's not these circumstances. Here, again, EEOC was under no legal obligation, other than acknowledging that the stay had been lifted and that it had authority to go forward with this collection. It was under no legal obligation to take these particular actions. So plaintiff's only option in the government's view is to bring another lawsuit? Yes, after EEOC was given an opportunity to respond to the changed circumstances and determine how it should proceed. Even though EEOC was a named defendant? Yes, and again, we don't dispute that we're bound by the court's orders as far as they go, but the order was to vacate the stay, and that does not itself impose or reapply any legal obligations on EEOC to proceed in a particular way. Wouldn't separate lawsuits be necessary? Why isn't the implication of your position just that they would have to then move for some kind of judgment or relief against EEOC so that the legal issue would be briefed about what the commission's obligation is and whether it has difficulty or reasons to stray from the assumed baseline that an EEO1 would go out each year? It's possible that could work, or maybe there could be an amendment to the complaint somehow. But the main thing is that the claim, some version of that legal argument, needs to be brought as such and litigated in the ordinary courts. It simply wasn't tested here. So legal obligations were assumed by the court. The court did seem to think that EEOC had to do these things as a result of the summary judgment order, but that question was just never presented. We, again, were alleged to have conceded it, and we did not. Well, I guess the conceding goes to my follow-up question, which is had the government made clear early that, hey, even if this stay is removed, you know, you're going after a mirage here because there isn't any obligation on EEOC to produce this. And I think that comes out in the standing argument. Perhaps it could have been presented differently in more of a remedy question, although, again, the government never imagined that this remedy would follow. So it really was very unexpected. But the standing argument does say that, you know, there's no requirement for EEOC to collect this in the first place and certainly no obligation to disclose. And that second point is conceded. So the sort of shaky premise of the suit seeking, you know, based entirely on wanting this information to which plaintiffs conceded they have no right, was out there even if not, you know, inserted at the point of the analysis that Your Honor is suggesting would have been helpful. But, again, the fact that it wasn't raised that way doesn't change the legal analysis here. This is still a case where the district court went so far beyond the ordinary vacator and remand to superintend a separate agency's conduct in a way that is unsupported by statute or regulation. There's nothing that requires EEOC to keep open collection. Well, can I ask you about that as to the status of litigation? So as I understand it, there's a dispute about whether the response rate is adequate under the district's order and then there's going to be subsequent briefing and argument and a determination about that in February? We have twice briefed whether the response rate is adequate, and we are waiting on a decision from the district court. So in response to our first motion for order saying that the collection was complete, at which point I think we had about 80 percent of the information and maybe closer to 75, the district court said, I'm not sure what is enough, but that's not enough. Come back to me later, and suggested that 85 percent could be a benchmark. Once we exceeded 85 percent, we went back to the district court. Plaintiff's state needs to be 98.25 percent, which is truly extraordinary. And again, nothing requires EEOC to keep it open longer than it wants to. What if the district court comes back and says, in whatever the release anticipated, I thought there was something in the record that indicated there's a submission deadline of February 7th, or there's something going on in early February? It has directed the parties to continue with the status reports until January 31st and then a joint status report on February 7th to determine completeness. So at the culmination of that, if the district court determines that the response rate is adequate, then at that point is the case over? Is it moot? There may still be relevance to the vacator of the stay at that point, and that's something that we would need to consider. It's possible that depending how obligations were discharged, other things in the background, that that can still affect the rights and obligations of parties in the world. But deeming the collection complete should discharge EEOC's continuing efforts and obligations under that order, which is significant. This is coming at a cost to the agency of $150,000 per week. The agency has spent over $7 million already on this, which is about 2 percent of its annual operating budget. This is an extraordinary burden for the agency and one that's not required by law. Why don't we hear from the appellees? May it please the Court, Robin Thurston for the National Women's Law Center and the Labor Council for Latin American Advancement. Given that Your Honor spent significant time on remedy, I think I'll start there. And I think the judgment of Austin's suggestion that the baseline expectation following vacature of the unlawful stay was that the data collection go back into effect is what both plaintiffs and the Court understood the litigation to be throughout, and also what the government, through its representations at the district court, allowed them to understand. For example, we briefed summary judgment of the district court and discussed the appropriate remedy. The government raised the possibility of disruptive consequences by vacating the stay and reimposing the data collection. Throughout litigation at the district court, plaintiffs were telling the government, we are eager for a decision in this case in a timely manner so that the data collection scheduled for spring 2019 could include component two. The government never told us or the court that it was its position that that would not be part of our remedy. And so when the district court, following its summary judgment order, which it has stated, it issued in time for the spring data collection in 2019 to include component two, when the data collection opened a couple weeks after the district court's order and did not include component two, plaintiffs and the district court were alarmed by the apparent lack of compliance with the summary judgment order. So even though you didn't seek that specific remedy in your lawsuit, you're saying you were entitled to that expectation based on statements made during the litigation? Well, what we thought was that the unlawful stay be vacated and that the revised EE01 form be back in effect. And that's what the district court ordered in its summary judgment decision, that the revised EE01 form, including component two, be back in effect. And as discussed with the government, the EEOC's regulations require that employers submit data annually. And the form of submission is controlled by the currently approved Paperwork Reduction Act form that OMB has approved. And following the vacature of the stay, the form that was back in effect included component two. So that was a necessary result of the vacature order. So you are assuming that EEOC would, I guess, what was the basis of your assumption that EEOC would necessarily collect data under whatever lawful form OMB had approved during the May to September period in the upcoming year? Because EEOC's regulations require that employers submit data on an annual basis. It has collected that data on an annual basis in the range of 50 years. This is a regular reporting requirement, which the EEOC had planned in the spring of 2019 to implement for component one, for the non-pay-related data. Once the stay vacated, excuse me, once the stay was vacated by the district court, component two became part of the operative reporting form once again, and employers were obliged to submit it. And EEOC was bound to use that form for collection unless it decided, if it had decided to do something else, there were mechanisms for it to do so. It could have received a new Paperwork Reduction Act approval to change the form, or there are other options to exercise that authority. But what it can't do is just change the form without receiving a new approval, and thereby not comply with the district court's order. Could it use the only approved form but tell employers on its database, I guess it's somewhat what it did, that we're not actually asking you to submit the data for the new component until we get some more bugs worked out? And I guess the question is, why was that not something that it's your burden to seek relief against or protection against by actually litigating that point, given that you already know at this point that EEOC is ambivalent and resistant about this, and it is an agency with its own authority to figure out how to go forward? Well, I think if Your Honors step back to what was happening in March of last year before the district court, the summary judgment opinion had been issued, and the data collection opened with only Component 1, Component 2. The court immediately held a status conference at the plaintiff's request, at which the district court said it had no interest in telling the EEOC how to conduct its business. But it was concerned about whether the EEOC, which has always been a named defendant in this case, whether it was complying with the district court's order. At that point, the EEOC was unable, the government, excuse me, was unable to tell the district court when it intended to impose the component to the data collection or any plans for compliance. Thereafter, the parties had several opportunities to submit papers, explaining the government had an opportunity to attempt to put forth a plan, which it eventually did, which is essentially the plan that the district court imposed. So just to clarify, when it opened the data collection, it had the only approved form available, but how did it not then solicit on Component 2? It opened the data collection permitting employers to file only Component 1 data and had a statement on its website that it was determining what to do. Even though the only approved form called for both? Correct. So they were filling half the form and submitting that? It's an electronic submission, and I think effectively they were only submitting the first half of the form, as far as visualizing whether it was filling half or filling the whole. I think that's hard to do when you think about an electronic submission, but it was not possible at that point for employers to submit Component 2 data via the regular course. Can I ask a question about the response rate part of it? So where does that – even if you think that there was an expectation, let's even call it an obligation for purposes of just argument, to submit the Component 2 data, where's the notion that there was some response rate that had to be achieved by the agency? That comes from the district court's equitable authority, Your Honor, and I think it's important in thinking about that to revisit some of the factual determination. But why is there an equitable authority to force a response rate that's nowhere in the law? I mean, do you disagree that EEOC could have, but for the district court's order, could have received Component 2 data, just as a legal matter, received Component 2 data and then cut off the receipt of Component 2 data after six weeks following the deadline? What is there in the law that would tell the EEOC that they can't do that? In the normal course, the EEOC does have discretion for how long to keep the data collection open, and in its paperwork – excuse me, in its federal registry notices setting forth this collection plan, it said approximately how long it intended to keep it open. In the past, it has extended that period by months, which is testimony that the district court heard in March from the EEOC's chief data officer. But I think what's important as to the question of whether this remedy was within the district court's discretion is to revisit some of the factual determinations that the district court made, which are really unrefuted by the government. Conclusions that the government had not demonstrated a commitment to efficiently collect Component 2 data, and that they did not have clean hands in the case, and it doesn't – the court did not have adequate insurances that the government would complete the Component 2 data collection. So I think – So what does that even – I don't understand – I'm not understanding what he means to complete the data – Component 2 data collection if there's no obligation to get – I mean, could it have been 100 percent? Could the district court have said, you can't stop until you get 100 percent response rate? No. Pretty close at 98.5. That had never been done before. I mean, I take it that your answer – Can I just ask – Yeah, yeah, go ahead. Could I just get an – could the district court have required 100 percent? If it – I think it is conceivable that within the – that would be within the scope of the district court's discretion to enforce compliance with its orders. You do think so? That's not, of course, what we have here. You're close. 98.5 is not far from 100. Correct, Your Honor. And I think one thing that the government has not addressed adequately in this briefing that we haven't discussed so far today is the real time constraints that plaintiffs and the district court were facing last spring, which is that the then-existing Paperwork Reduction Act approval was scheduled to expire by September 30th. So if the collection didn't start with sufficient time before September 30th for employers to be able to file their reports – and that means before September 15th, for example – you would need a period of months for employers to do this. There was a real chance that plaintiffs would lose any remedy. And that timing consideration was really driving the plaintiffs' concerns and the district court's determinations as to its equitable authority. I just find it inexplicable that you would say that the district court could order a 100% response rate, and that seems like what I took to be your position – and now I'm not sure whether I'm misunderstanding it – is that the district judge was acting within remedial power, the nature of which was to try to put the plaintiffs in the position they would have been in but for the unlawful stay. And that necessarily involves some counterfactual. And, as you say, because the nature of the violation was, in effect, a slow walking or a prevention of something that was time limited, there was some urgency, which I guess accounts for pushing to get this up. But in terms of the percentage collection, it seems to me critical to your position that she looked at what the percentage response rates were in the past on the data that EEOC was already collecting, and that without that, if you just say, oh, 100%, I mean, no agency ever gets a 100% response rate, that without her having tried to use some kind of equitable reasoning that says, counterfactually, we haven't ever collected this information. How do we know what the response rate is when the system is functioning in a healthy way? We're going to look to the only analog we have. And whether that was as finely done or as sensitive to the difference in the nature of the data is a separate question. But I just don't follow where you think a district judge would have that authority. I just don't. I think that probably is a better articulation of our position. And to think about the response rate a little bit more, what the district court ordered was not explicitly 98.25%. It ordered at our suggestion and without a contrary suggestion from the government at the time that the completion be measured by the mean of the prior four years of reporters that actually reported. I'm not sure I'm following that line of reasoning either. Because if the idea is you're supposed to mimic what happens, there's no requirement in the law or anywhere, I think, that the response rate has to be the same every cycle. What happens is you get the response rate that you get. Just because it happened to be, say, 85% last time, doesn't mean there's an entitlement to 85% the next time. It means you get the response rate that the EEOC does within whatever legal parameters it's operating under. And sure, I imagine that if the EEOC decides arbitrarily to cut off responses in a way that could occasion a challenge based on arbitrary and capricious government action or a failure to follow through, there's APA actions that could be brought for that. But in terms of the authority to compel, even if we assume that the goal was to carry forward a response rate that had been roughly in existence before, is there actually a legal obligation to continue the same response rate the next cycle? I think as far as a standalone case in the first instance, I think it's unlikely there would be a cause of action for that. But in terms of the district court ensuring that the government actually complied with its orders, in a situation where the district court found that the government was not committed to actually conducting the collection that the district court determined was required by the order, I think that then you look into the district court's equitable authority, which is what happened here. And the district court found that to be a reasonable measure of what appropriate completion would be. But Ms. Thurston, that gets to the underlying point that Ms. Powell was making, which is where is the legal obligation to, you said they weren't committed to the collection, and I guess from whence arises the legal obligation to be committed to the collection of this data? I think there's another issue about using that benchmark for the response rate, which is this is a very different kind of data. It's maybe more voluminous, harder to collect, I don't know. But certainly a new data collection. So the idea that the well-oiled machine that's been in place for decades and gets an 80, 90 plus percent, would that be an apt benchmark for this brand new type of data? That's a question. But the underlying question that Ms. Powell is raising is, why do we assume as a remedial benchmark that the agency has to put its shoulder to this wheel? Why don't we use the ordinary? They're arguing, you remit to the agency, the agency is the agency, and it's a new day. It's doing things differently now. Well, if the agency had undertaken to impose a component two in the first place, data collection in the first place after the summary judgment order, then the district court would not have felt the need to get involved. It was only when the district court started to see the failure to comply that it found it necessary to impose basic remedial requirements. So this isn't like the Palisades case where a court tells the agency, here's the reimbursement rate that you have to achieve on remand. The district court instead accepted the EEOC's representations as to how it would comply. The EEOC proposed the timeframe for collection upon inquiry and pushing by the district court. The EEOC said we'll do this by September 30th. The district court accepted as a reasonable measure of completeness our suggestion that we go by this mean of the prior four years. That's something the government didn't contest at the district court. I think I'm asking the more basic question, which maybe we've just beaten this dead horse already. But the notion that there is an entitlement to swift and fulsome attention to this issue, what claim is that a remedy for? Because without it, there would have been no relief for the plaintiffs. I mean, if you think of the counterfactual that the EEOC had opened the Component 2 data collection for a day without notifying employers and thereby there was effectively no data collection, perhaps the EEOC would claim that was sufficient to have complied with the vacature order and lifting the stay, but that plainly would have left plaintiffs without any relief. So where are we in this case now? Judge Srinivasan's initial question raised that. And the government said, well, there are only two things standing, the response rate and the monthly reporting. We think that the government's appeal is nearly moved. We expect that the district court will, in fact, have the collection wind down within a matter of days or weeks. As you discussed with the government, there's a report due on February 7th. And I think that assuming that it – based on the government's most recent status report, it becomes clear that there are diminishing returns to keeping the collection open. Everyone will agree it's an appropriate time to close it. So we will likely not get to 98%. That's not a measure that we would ultimately insist upon. Well, I'm just not clear. I mean, this court may not rule before February 7th, but hypothetically, even if the district court rules then. And basically the government's saying you've gotten everything that you're entitled to, and you've gotten even more. So there's nothing left to litigate. I mean, the monthly reporting, that's become moot given that February 7th is the date. And you're conceding now that you're not going to insist on this 98.5%. And so what's left? We think the appeal will likely become moot. At what point? When the collection closes. What about the tolling with respect to the validity of the currently approved EO1 form? I gather there's process in place to get a new EO1 form approved. It doesn't have Component 2, but that's not finalized. So as I understand it, the tolling is to say traditionally you only have three years under the Paperwork Reduction Act for a data collection form like this. It was not in use for a big chunk of that. So the district court said it can continue to be live for an additional period. Is that also moot? I don't think the government has said it appealed that, but is that something that matters to you in any way? No, that would likely also become moot. It wasn't appealed. The district court found, and we agree, the tolling was necessary to make sure that employers didn't have an incentive to just withhold their data until September 30th and then never have to submit it. Let me follow up on my question so we get clear here. You're saying as of February 7th, you think the case would become moot. What I'm trying to understand is, suppose you're right about that. Then why would we say anything in a sense? Because the government's position will obviously be it's going to move this OMB period of approval has expired. Now everybody knows, including you, that EEOC wants to go along a different path than it has for the last 50 years. So you'll have to bring a new lawsuit. So why are we even pursuing this one? We think that the appeal likely will become moot,  So this is not capable of repetition, evading review. Because it was an independent, three-year paperwork, Reduction Act approval, it's not immediately apparent to me how that would apply. So are you in agreement with the government that there are only these two things left in the case? At best? Standing and the question of the response rate. No, we're beyond that. The government says the only thing left is the monthly reporting and the compliance rate. And you're conceding that basically the first is moot because of the February 7 date, and secondly, you're not going to insist on your 98.5%. So what are we dealing with? I mean, the government has preserved all its argument on standing and the district court's lack of authority to enter the remedial order. But I'm just wondering what's live in this case, because a lot of what we're hearing today, it seems to me, is premised on the notion that a lot of things were assumed in the district court, and EEO never abused the district court of that before it entered summary judgment, and everybody proceeded on the basis of what EEOC had said. Now all these issues are coming up that things should have been litigated, but they weren't. So that's troubling to me, number one. But number two, why are we going to issue all this law about things that are basically moot? As to the first point, Your Honor, we think if the government had understood that it wasn't going to reimpose Component 2 data collection, it's a burden to raise that issue and brief EEOC's obligations as a defendant in the case. But setting that aside, we do think that the appeal will likely become moot, assuming that the data collection closes around February in the near future, and that based on the facts as we understand them, there's very little remaining. Even the standing point? Is there a reason that that would remain important for the district court's remedialist provision or anything? I don't know. Why don't we go ahead and answer the question? I'm just not sure whether the standing is still an operative question for you, or maybe not. Maybe everything goes away. When and if some order is made or agreement is made about response rate, do we have to decide standing? I'm just not sure whether. If the collection closes in an orderly way as we anticipate and does so quickly, I don't think that this court needs to address standing, and the district, there would be no need to. It might be advisory to address standing if the case is moot. I'm sorry? It might be advisory to address standing if the case is moot, perhaps. Would it be issue an advisory opinion? I'm not sure, and I just wonder about, and I guess I should ask the government whether it bears at all, and how they treat the data they've collected. The government made some representations that there may be collateral issues that they would want to think about regarding mootness. We don't know what those are, and we would be happy to think about that. We're into issues that just aren't in this record yet. All right. Let's hear from the government. Did you have any other key point you wanted? Could you just talk? You went to remedy. I would be happy to address concerns re-standing, but we addressed them in the brief as well. I think we'd be happy to stand on those arguments. Great. Thank you. All right, counsel for the government. Any need to address standing? I'm sorry? Any need to address Article III's standing, given your acknowledgement to Judge Srinivasan that there are only two live issues left in this case, one 30-day reporting requirement and the compliance rate? And you heard what counsel for the plaintiffs, appellees, stated. They're not going to insist on the latter. And for all intents and purposes, the former is moot too. Yes, Your Honor. So I'd like to address the mootness and then also speak briefly to what's been said about, you know, what they've been insisting on in district court and the obligations there. But with respect to mootness, we haven't briefed this issue. You haven't briefed what? Whether the case would become moot if these obligations in district court were – But your brief talks about what's left in the case. Yes. So, again, I don't want to take a definitive position with respect to mootness when the government has not had the opportunity to brief it. But there may be obligations that could be affected conceivably. We're not right now saying that they are. For example, even if the collection is closed, that may not formally relieve employers of their reporting obligations. But all that is to be litigated in another case. It's what I'm trying to get at. If it's moot, there's nothing for us to decide. Well, yeah. What I'm trying to get at as distinct from offering a lot of interesting opinions on the issues that the parties have addressed in their briefs. But this train has left the station. It is largely out. I agree. But all we're saying is that there may be ways in which an order saying that the stay never should have been in effect could either affect the way the information is treated or the obligations of employers in a formal sense and that that could still be enough to support a life of privacy. But if the court simply says the case has become moot, it isn't expressing any opinion on these legal issues. That's what I'm trying to get everybody to focus on. You may be right in a lot of points, but the train has left the station. So what are we going to do now? Tell the train to back up and we'll start all over again? No, but you've already started all over again by proceeding. The approval is over, and it's clear you're going down another path for the future. The agency has announced that it's going down a different path for the future, but it may yet be that the vacator of the stay continues to affect various rights and obligations, and that's just not something that we have had an opportunity to explore. As I understand it, the way you're articulating it is you're preserving the ability to say that it's not moot, but you're not saying that it's not moot. That's correct, Your Honor. So it may be moot. It may be moot. You just don't know yet for sure. I wondered if it matters in terms of how you think your clients will treat anything, let's say the data that they've collected, if they believe that the district court had authority to do what the district court did, or if they believe—this is really a version of a mootness question— or if they believe that she never did have that authority because the plaintiff's lax in it. Can you envision that— I mean, maybe what I'm saying is that if we're going to dispose of the case on mootness grounds, we should have supplemental briefing on it. I think that makes sense. I can't definitively say that we do not hold the view that the decision about whether the stay ever should have been an effect— Ever should have been invalidated, you mean. Yes.  But my whole point is that where the court declares it's moot because the government says there are only two live issues in the case, all right, the compliance rate and the reporting, we're not saying anything about the legal issues underlying the government's appeal. That's all I'm getting at. We're just saying it's no longer a case or controversy before this court in this case at this time. My only point was that the standing argument may still be a live case or controversy if the argument is over the validity of a district court order that does still affect rights and obligations. But the argument—what I'm getting at is they have said they're not going to insist on the compliance rate, so that's gone. The 30-day obligation is gone. There's nothing live for us to deal with except by advisory opinion on a lot of very interesting issues. There's no question about that. But you haven't forfeited any of them or waived them, and neither have appellees. That's all I'm trying to get at. What's the case or controversy left in this matter? And I thought your brief was quite clear, as you said to Judge Srinivasan. There are only these two points, and we've heard those have gone away. Yes. That much is true, Your Honor. The case may be moot, but I— Do you agree at least with this, that if a court determines that there is no live case or controversy pending before it because the train has left the station, that the court is not expressing any view on your challenges to what happened in the district court? Those issues will all come up in another case where these are matters that are live for controversy. That's all I'm trying to understand. I don't understand the Supreme Court's mootness doctrine to suggest that it's saying anything, that, well, it's moot, but we like the government's argument about point one and point two. That's not the way these cases read. That's not—that's, of course, not how it works. But if I think where the district court order does continue to have effect, then there may yet be a case for controversy. There may, but nobody's identified it today. With respect to what's left in district court, I did just want to clarify. I mean, the way the recent proceedings have gone there, we have asked for relief from the district court's order, and plaintiffs have opposed that request, insisting on the 98.25 percent benchmark. So it's not the case that everyone's on the same page, that we should get this wrapped up, at least as far as the record goes. And we asked for a ruling from the district court by last Friday and didn't get it. And so every week that goes by, EEOC continues to take these efforts, continues to pay significant funds, all for something that it should never have been required to do in the first instance. And there's no—again, the way things have been structured in district court, the February 7th date is a date for a joint filing about the status of things. But the district court expressly contemplated that it could require further actions by the commission beyond that point. And it—I mean, for us, this is—it's certainly not over yet. It should be. It should have been over a while ago. So can I address this question? And I'm not—I'm sympathetic to the difficulties of arguing in the hypothetical, especially as the government have been in your shoes. But let's suppose that those issues do get resolved. Yes. And I understand your point that they haven't been resolved yet and we can't be sure that they will be. If those issues do get resolved and the collection is closed off and everybody agrees that the collection is closed off and the district court signs on to that and says, okay, I'm satisfied, then there's a possibility that you want to preserve, which I understand, that there still may be a live controversy as to the standing issue because that could have repercussions. Yes, Your Honor. So you haven't made a definitive conclusion about that, but you at least want to preserve the ability to argue that. Yes. And then let's suppose further, and hypothetically you're going to resist this, but let's suppose further that we agree with that and then we issue a decision that says that there is standing. And then at that point, there's no need at that point to do anything further with the case because the things that would be left after standing as to remedy will, by hypothesis, have been dealt with in the district court. Yes. Do you agree with that? Yes. Okay. I agree with that. Okay. All right. Anything further or can we take the case under advisory? I'll take it further. Thank you very much. Thank you.
judges: Rogers, Srinivasan, Pillard